IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| ROXANNE CANDACE LOCKWOOD, | : | CIVIL ACTION |
| | : | NO. 13-4921 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| | : | |
| Defendant. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    December 22, 2015


        Roxanne Lockwood ("Plaintiff") brings this action
pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of the
decision of Carolyn W. Colvin ("Commissioner" or "Defendant") –
the acting Commissioner of the Social Security Administration
("SSA") – denying Plaintiff's application for Disability
Insurance Benefits ("DIB") and Supplemental Security Income
("SSI") under the Social Security Act. Upon consideration of the
administrative record, submitted pleadings, Magistrate Judge
Lynne A. Sitarski's Report and Recommendation ("R&R"), and
Plaintiff's Objections thereto, the Court will overrule

Plaintiff's Objections, adopt the R&R, and grant judgment to the Commissioner.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2010, Plaintiff filed an application for DIB, alleging that she is disabled due to fibromyalgia, Meniere's disease, lumbar disc disease, and spondylosis. R. 127.[1] Plaintiff, who was thirty-three years old in February 2010 (the onset date of her alleged disability), R. 124, has worked as an assistant manager at a convenience store, a marketing support representative, a project manager, an assistant service advisor, and a service coordinator. R. 128.

The SSA denied Plaintiff's claim on January 13, 2011. R. 73-77. Plaintiff then requested a hearing before an administrative law judge ("ALJ"). R. 80-81. ALJ Jennifer Lash held a hearing on January 6, 2012. R. 44. Plaintiff and an impartial vocational expert ("VE") testified. R. 44-71. The following month, the ALJ issued an unfavorable decision, finding that Plaintiff is not disabled under the Social Security Act. R. 19-33. Plaintiff requested review by the Appeals Council, which also denied her request. R. 1-4.

Plaintiff commenced the present action on August 23, 2013, seeking judicial review of the ALJ's decision pursuant to

---

[1]      Citations to "R." are citations to the administrative record, which is located on the docket at ECF number 8.

42 U.S.C. § 405(g). ECF No. 1. On May 4, 2015, Magistrate Judge
Lynne A. Sitarski entered an R&R, recommending that Plaintiff's
request for review be denied and judgment be entered in favor of
Defendant. ECF No. 13. Plaintiff filed an Objection, ECF No. 14,
to which Defendant responded, ECF No. 16. The matter is now ripe
for disposition.

## II.  STANDARD OF REVIEW

The Court undertakes a de novo review of the portions
of the R&R to which the plaintiff has objected. See 28 U.S.C. §
636(b)(1); Cont'l Cas. Co. v. Dominick D'Andrea, Inc., 150 F.3d
245, 250 (3d Cir. 1998). The Court "may accept, reject, or
modify, in whole or in part, the findings or recommendations
made by the magistrate judge." 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's final determination
that a person is not disabled and, therefore, not entitled to
Social Security benefits, the Court may not independently weigh
the evidence or substitute its own conclusions for those reached
by the ALJ. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir.
2002). Instead, the Court must review the factual findings
presented to determine whether they are supported by substantial
evidence. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399
F.3d 546, 552 (3d Cir. 2005).

Substantial evidence constitutes that which a

"reasonable mind might accept as adequate to support a conclusion." Rutherford, 399 F.3d at 552 (internal quotation marks omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Id. (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

        An ALJ uses a five-step inquiry to determine if a plaintiff is entitled to SSI benefits. Basically, a plaintiff must establish that (1) she is not engaged in any "substantial gainful activity," and (2) she suffers from a severe impairment. Jesurum v. Sec'y of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)). If the plaintiff satisfies these two elements, the Commissioner determines (3) whether the impairment is as severe as the impairments listed in 20 C.F.R. pt. 404, Subpt. P, App. 1, which creates a presumption of disability. Id.

        If the plaintiff's medical impairment is not "listed," the plaintiff must prove that (4) the impairment nonetheless prevents her from performing work that she has performed in the past. Id. The relevant inquiry is "whether the plaintiff retains the residual functional capacity to perform her past relevant

4

work." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 39 (3d Cir. 2001). If the plaintiff proves she does not, the Commissioner must grant her benefits unless the Commissioner can demonstrate (5) that considering the plaintiff's residual functional capacity ("RFC"), age, education, and work experience, there are jobs available in significant numbers in the national economy that the plaintiff can perform. <u>Jesurum</u>, 48 F.3d at 117 (citing <u>Ferguson v. Schweiker</u>, 765 F.2d 31, 37 (3d Cir. 1985)).

## III. THE ALJ'S DECISION

Using the five-step inquiry described above, the ALJ determined that Plaintiff is not disabled.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. R. 24.

At step two, the ALJ found that Plaintiff suffers from the following severe impairments: a fibromyalgia disorder; Meniere's disease, with vertigo; an obstructive sleep apnea disorder; a lumbar degenerative disc disorder; status post laminectomy; obesity; and an affective disorder. <u>Id.</u>

At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. R. 25.

At step four, the ALJ found that Plaintiff has the RFC to perform less than the full range of sedentary level exertional work, and is unable to perform any past relevant work. R. 26-31.

At step five, relying on the testimony of the VE, the ALJ found that there are jobs available in significant numbers in the national economy that Plaintiff can perform. R. 32-33. Such jobs include order clerk, pari-mutuel ticket checker, and lens inserter. R. 32. The ALJ thus found that Plaintiff is not entitled to the requested benefits. R. 33.

## IV.  DISCUSSION

In this action, Plaintiff argues that the ALJ's decision that Plaintiff could perform several sedentary jobs is not supported by substantial evidence for two reasons: (1) the ALJ did not properly evaluate the medical evidence, and (2) the ALJ did not properly consider Plaintiff's subjective complaints. Each argument is analyzed in turn below.

### A.  Medical Evidence

First, Plaintiff argues that the ALJ, in finding that Plaintiff is capable of performing limited types of work, improperly evaluated Plaintiff's medical history. Specifically, Plaintiff says that the ALJ was wrong to give little weight to

the opinion of Dr. Jason Sanderson, who has concluded that
Plaintiff is unable to perform even sedentary jobs.

An ALJ's "finding of residual functional capacity must
'be accompanied by a clear and satisfactory explication of the
basis on which it rests.'" Fargnoli, 247 F.3d 34 at 41 (quoting
Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). When
considering medical evidence, "an ALJ is not free to employ her
own expertise against that of a physician who presents competent
medical evidence. When a conflict in the evidence exists, the
ALJ may choose whom to credit but 'cannot reject evidence for no
reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d
422, 429 (3d Cir. 1999) (quoting Mason v. Shalala, 994 F.2d
1058, 1066 (3d Cir. 1993)). An ALJ may choose to give a
physician's opinion "more or less weight depending upon the
extent to which supporting explanations are provided." Id.
Ultimately, the decision whether a claimant is disabled is
reserved to the Commissioner, and "[a] statement by a medical
source that [a claimant is] 'disabled' or 'unable to work' does
not mean that [the SSA] will determine that [the claimant] is
disabled." 20 C.F.R. § 404.1527(d)(1).

Here, the ALJ considered Dr. Sanderson's opinion, but
granted it little weight, noting:

> Dr. Sanderson appears to have based his assessments
> primarily, if not solely, upon the claimant's
> assertions and complaints; that the claimant testified

> that she completed a section(s) of Dr. Sanderson's
> most recent opinion; that the record reveals no
> documentary medical evidence of musculoskeletal or
> neurologic compromise which would adversely affect the
> claimant's ability to perform exertional and non-
> exertional activities to the degree as indicated in
> these assessments; that the assessments are
> inconsistent with specific medical findings and/or
> observations made elsewhere in the record as earlier
> cited; that the assessments are not supported by
> reports which primarily reveal only routine,
> conservative, outpatient care; and that the
> assessments are inconsistent with the claimant's self-
> reported activities of daily living.

R. 30-31. Plaintiff asserts that these conclusions are flawed for multiple reasons.

First, Plaintiff argues that it was unreasonable for the ALJ to rely on the lack of evidence concerning musculoskeletal or neurological compromise, because such evidence is not a prerequisite to a finding of disability where fibromyalgia is concerned. Pl.'s Br. 10, ECF No. 9 (citing Haldeman v. Massanari, No. 00-5115, 2002 WL 3234831, at *3-4 (E.D. Pa. Jan. 10, 2002)). While Plaintiff's point regarding fibromyalgia is correct, this finding is more reasonably understood in the context of the ALJ's additional finding that Dr. Sanderson's assessments contradicted other medical evidence in the record (which Plaintiff does not discuss). Most notably, another doctor found that Plaintiff had "a normal gait, normal ranges of motion, and normal grip and sensory functioning." R. 28. Therefore, if the ALJ had dismissed Dr. Sanderson's opinion

solely on the grounds that it lacks musculoskeletal or
neurological evidence, Plaintiff would have a better argument.
But in the context of the entire record, there is substantial
evidence supporting the ALJ's conclusion that Dr. Sanderson's
opinions were contradicted elsewhere.

Next, Plaintiff suggests that the ALJ should not have
considered the fact that Plaintiff filled out portions of her
own Multiple Impairment Questionnaire in advance of an
appointment with Dr. Sanderson – rather than Dr. Sanderson
filling it out himself – because Dr. Sanderson "reviewed it and
agreed with it" during the office visit. R. 55. But even
assuming that Dr. Sanderson did review Plaintiff's answers, this
fact still, as Defendant argues, "supports the ALJ's opinion
that Dr. Sanderson based his assessments on Plaintiff's
subjective complaints rather than objective clinical findings."
Def.'s Resp. 5, ECF No. 10. For example, Plaintiff herself
filled out the following portions, among others, of the
questionnaire:

- "What is your diagnosis of your patient's condition?"

- "Identify the positive clinical findings that
  demonstrate and/or support your diagnosis and indicate
  location where applicable."

- "Please list your patient's primary symptoms,
  including pain, loss of sensation, fatigue etc."

- "To what degree can your patient tolerate work stress? Please explain the basis for your conclusions."[2]

R. 375-82. In other words, the fact that Plaintiff filled out her own diagnosis section, as well as the clinical findings supporting that diagnosis, provides substantial evidence upon which the ALJ reasonably concluded that Dr. Sanderson based his assessments upon Plaintiff's own statements.

Next, Plaintiff argues that it was unreasonable for the ALJ to find that Dr. Sanderson gave Plaintiff only "routine, conservative outpatient care." R. 30-31. In support of this argument, Plaintiff notes that she has had two lumbar laminectomies. Pl.'s Br. 4. But neither of those procedures were performed by Dr. Sanderson; in fact, one of them occurred several years before Plaintiff was first treated by Dr. Sanderson and nearly ten years before Plaintiff began visiting Dr. Sanderson regularly. Pl.'s Br. 4-5. Plaintiff also points out that Dr. Sanderson has referred her to multiple specialists, who tried various treatments for her symptoms, including diet, medications, an ear tube, shoulder injections, and exercise. Id. at 11-12. But Dr. Sanderson's own treatment of Plaintiff –

---

[2]     Plaintiff answered as if she is a doctor: "In many cases, patients with fribromyalgia [sic] suffer from increased symptoms as a direct result of stress." R. 380.

monthly visits and prescriptions for medication, <u>id.</u> at 5-8 –
remains routine, conservative, and outpatient.

Plaintiff then argues that the ALJ's finding that Dr.
Sanderson's assessment conflicted with Plaintiff's self-reported
activities was unreasonable because the ALJ "overstated
Plaintiff's actual description of what she can and cannot do."
<u>Id.</u> at 13. The ALJ stated that:

> The claimant testified that she is independent in
> matters of personal care, that she drives several
> times a month, that she goes grocery shopping every
> four to six weeks, that she had been attending college
> classes until May 2010, that she can handle personal
> finances, that she uses a cellphone and sends text
> messages, and that she reads books daily. Although the
> claimant testified that she finds it difficult to
> cook, she also testified that she prepares simple
> meals using a microwave. While the claimant testified
> that she hasn't used her Facebook account since
> Thanksgiving, the claimant also testified that she
> occasionally uses the computer for email. Even
> granting that the claimant may perform some of these
> activities with difficulty, only occasionally, and/or
> with the assistance of other people, the level of
> activity as reported does not equate with the severity
> of physical or mental impairment as alleged.

R. 28. Plaintiff correctly notes that some of those statements
are arguably misleading. For example, while it is true that
Plaintiff "reads books daily," as the ALJ stated, Plaintiff
finds reading "a daunting task" and reads only "five to ten
minutes" each night in an effort "to ease into having the CPAP
[Continuous Positive Airway Pressure, used to treat sleep apnea]
on [her] face." R. 59. Nonetheless, the ALJ did acknowledge that

Plaintiff has difficulty completing the tasks outlined above,
and simply concluded that even with difficulty, Plaintiff's
level of personal care is inconsistent with Dr. Sanderson's
assessment of her condition. The question is not whether the
Court would have evaluated Plaintiff's testimony in the same way
as the ALJ, but whether there is "more than a mere scintilla" of
evidence that a reasonable person might accept as adequate to
support the conclusion that Dr. Sanderson's opinion was worth
little weight. Rutherford, 399 F.3d at 552 (quoting Ginsburg,
436 F.2d at 1148). The evidence is sufficient to support the
ALJ's decision here.

      Finally, Plaintiff argues that the ALJ should have
explained why she did not "make any accommodations for
Plaintiff's limited ability to use her hands." Pl.'s Br. 14.
This argument is fruitless, because while the ALJ may not have
explicitly discussed Plaintiff's alleged hand-related
limitations, she did explain why she gave Dr. Sanderson's
opinion little weight – and it is only Dr. Sanderson's opinion
that supports these allegations. Accordingly, the ALJ
necessarily explained why she found incredible Plaintiff's
alleged hand limitations when she explained why she gave little
weight to Dr. Sanderson's conclusions, and Plaintiff's argument
thus holds no water.

Considering all of the above, there is plenty of evidence that a "reasonable mind might accept as adequate to support" the ALJ's conclusion in this case. <u>Rutherford</u>, 399 F.3d at 552. Accordingly, Plaintiff's argument that the ALJ improperly evaluated her medical history is unavailing.

B.   <u>Plaintiff's Subjective Complaints</u>

Second, Plaintiff argues that in addition to mischaracterizing Plaintiff's symptoms and treatment, the ALJ "has failed to advance valid reasons for disbelieving Plaintiff's assertions" about her own limitations. Pl.'s Br. 16. Because her alleged disability includes fibromylgia, which is notoriously difficult to diagnose, Plaintiff argues that her own testimony is entitled to particular deference. <u>Id.</u> (citing <u>Perl v. Barnhart</u>, No. 03-4580, 2005 WL 579879, at *3 (E.D. Pa. Mar. 10, 2005)).

Judge Sitarski found that although it is true "that the ALJ's decision would not have been substantially supported had she rejected Plaintiff's complaints of fibromyalgia pain due solely to the lack of objective support," R&R 11, the decision <u>was</u> substantially supported because the ALJ based her credibility determination on a number of factors. Specifically, the ALJ also considered the daily tasks that Plaintiff is able to perform outside of a work environment, as well as

13

inconsistencies between some of Plaintiff's statements and reports from several doctors. Id. at 11-12. In light of this record, Judge Sitarski said, there is substantial support for the ALJ's decision to discredit some of Plaintiff's statements about her condition. Id. at 11.

Plaintiff raises no objection to this portion of the R&R. Accordingly, the Court need not consider this argument de novo and will approve and adopt Judge Sitarksi's findings and conclusions with respect to this argument.

## V.    CONCLUSION

For the foregoing reasons, the Court finds the ALJ's decision to be supported by substantial evidence, overrules Plaintiff's Objection, and adopts the Report and Recommendation, awarding judgment to the Commissioner.